**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br><br>v.                                        )<br><br>**(2) LEISY BAEZ-ZAPATA,**          )<br><br>          **Defendant.**            ) | **Crim. No. 19-10316-LTS** |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**EMERGENCY MOTION FOR RELEASE ON CONDITIONS**

Now comes the United States, by and through the undersigned Assistant United States Attorney, and hereby files its opposition to Defendant Leisy Baez-Zapata's (hereinafter, "Defendant" or "Baez-Zapata") Emergency Motion for Pretrial Release on Conditions.  *See* Docket No. 73 (hereinafter, the "Motion").  Baez-Zapata raises only systematic concerns that apply to all detained individuals, and identifies no individualized facts regarding his health condition that put him at particular risk.   Nor has he raised more than the speculative prospect of a COVID-19 outbreak at MCI Plymouth (hereinafter, "Plymouth"), where he is currently detained, or demonstrated the inadequacy of either the measures taken by Plymouth administrators and staff to prevent the spread of the virus, or the medical care he would receive at Plymouth if he were to fall ill.   For the reasons discussed in greater detail below, this Court should DENY the motion.

**BACKGROUND AND RELEVANT FACTS**

On July 26, 2019, Baez-Zapata and his co-defendant Ysrael Nunez (hereinafter, "Nunez") were charged by criminal complaint with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, and distribution of and

1

possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi).  *See* Complaint Affidavit, Docket No. 4.

Baez Zapata was arrested on July 25, 2019.   On July 31, 2019, following an evidentiary hearing on probable cause and detention, the Court found probable cause and entered a voluntary order of detention without prejudice.  *See* Docket No. 12.

On August 28, 2019, a federal grand jury, sitting in Boston, Massachusetts, returned a three count Indictment charging Nunez and Baez Zapata with one count of conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, charging Nunez with one count of distribution and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), and charging both defendants with distribution and possession with intent to distribute 400 grams or more of fentanyl and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi), and 18 U.S.C. § 2.

The case is currently set for a further status conference before this Court on May 18, 2020. No trial date has been established by the Court.

## ARGUMENT

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(e).  In this case, as the government argued at the July 31, 2019 detention hearing, there are no conditions or combination of conditions that will reasonably assure the appearance of Baez-Zapata or the safety of the community if Baez-Zapata is released.   The COVID-19 pandemic—while undoubtedly serious and necessitating strong precautionary steps to avoid contraction, particularly in detention

facilities—does not present a basis for this defendant to be released.

<u>The Bail Reform Act Factors Support Detention.</u>

Following his arrest, the government moved for Baez-Zapata's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C), which authorizes detention where the defendant possess a risk of safety to any other person and to the community, and 18 U.S.C. § 3142(f)(2)(A), which authorizes detention where the defendant poses a serious risk of flight.   The government filed the affidavit of Homeland Security Investigations Special Agent Jared Matyka in support of the criminal complaint, arrest, and detention.   *See* Complaint Affidavit, Docket No. 4.   The Complaint Affidavit is incorporated by reference herein.

Pursuant to 18 U.S.C. § 3142(e), there is a presumption for detention, since Baez-Zapata has been charged with a controlled substance offense that carries a maximum penalty of more than ten years.   Baez-Zapata has not offered sufficient evidence to rebut that presumption.   In fact, Baez-Zapata has not yet been interviewed by probation, nor does his motion offer proposed conditions for release.   He suggests home confinement, but does not give any information as to where he proposes to live.   Even if Baez-Zapata had rebutted the presumption, there are no conditions or combination of conditions that would reasonably assure the appearance of Baez-Zapata, nor that would reasonably assure the safety of any other person and the community.

In making its detention determination, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by the defendant's release.   *See* 18 U.S.C. § 3142(g).

As the government argued at the July 31, 2019, detention hearing, there is no condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of the community.   Baez-Zapata sold over a kilogram of fentanyl, which is an incredibly dangerous and highly addictive controlled substance.   Based on that conduct, Baez-Zapata presents a significant danger to the community.

Moreover, the evidence is overwhelming in this case.   There are multiple recordings of controlled purchases, and negotiations of drug transactions with Baez-Zapata's co-conspirators. The evidence specifically related to Baez-Zapata is limited to one day – but on that one day Baez-Zapata personally delivered a kilogram of fentanyl to a cooperating witness and undercover agent. The expected sentence in this case is significant.   Defendant Baez-Zapata faces a mandatory minimum sentence of ten years in prison.   Though he may be safety valve eligible, he would still be facing a significant sentence.   Baez-Zapata has not been interviewed by probation, however, the government believes that Baez-Zapata is a citizen of a foreign country who is in the United States unlawfully and who has family connections outside of the United States.   As such, the nature of the charged offense, the weight of the evidence, the expected sentence in this case, and the defendant's immigration status, all speak to the risk of flight.   *See* 18 U.S.C. § 3142(f)(2)(A). Based on the foregoing, release is not warranted pursuant to 18 U.S.C. § 3142.

## The COVID-19 Pandemic Does Not Warrant Baez-Zapata's Release

The government appreciates the gravity of the COVID-19 pandemic.   To be sure, the COVID-19 pandemic presents a public health emergency.   All facets of national, state, and local government have turned their focus and determination to slowing the spread of the outbreak, protecting the health and safety of the community, and tending to the medical needs of those who

have contracted the virus.   That focus and attention includes the authorities and staff responsible for our federal and state detention facilities, including at Plymouth, the facility at which Baez-Zapata is currently housed.   It also includes our courts and all those involved in the criminal justice system, who are adjusting our standard procedures and practices to minimize the risk of transmission.   The government is committed to ensuring the safety and health of defendants like Baez-Zapata.   While the risk of COVID-19 is real and significant, Baez-Zapata fails to demonstrate that the COVID-19 pandemic warrants his release, as he does not provide a meaningful nexus between the virus and himself.

Baez-Zapata is 22 years old, and he does not claim that he has any underlying medical conditions that place him at a higher risk of adverse impact or which make him more vulnerable than any other detainees.   In his motion, Baez-Zapata claims that "the Coronavirus already has been introduced at Plymouth," that a defendant "had been in close proximity with a family member who tested positive," and that "a Plymouth staff member tested positive for COVID-19."   As Baez-Zapata concedes in his motion, no detainees were in contact with that staffer.   Moreover, there is no indication that the detainee who had been in close proximity with family member who tested positive had any symptoms himself, or was otherwise in contact with other detainees.

Furthermore, Baez-Zapata does not argue that Plymouth administrators and staff have failed to implement adequate measures to prevent the spread of the virus; instead, he raises only the vague specter of the dangers which the pandemic COVID-19 present.

In preparing to respond to motions such as the instant one, this office has consulted with officials at Plymouth to obtain relevant information as to its handling of the public health crisis. It is clear that Plymouth has acted swiftly and responsibly to implement precautionary measures

to help prevent the introduction and transmission of COVID-19 in its facility and to otherwise maintain a safe environment for its detainees.  Based upon this information, it appears that Plymouth is handling the situation as well as it can.  In response to the COVID-19 pandemic, Plymouth has taken special precautions to protect inmates and staff from exposure to the Coronavirus.  *See* Affidavit of Sheriff Joseph D. McDonald, Jr., attached hereto as Exhibit 1 (hereinafter, "McDonald Affidavit").  Specifically, those precautions include: (1) enhanced inmate intake procedure; (2) adopting the treatment and detection practices consistent with guidelines from the Center for Disease Controls ("CDC") and Department of Public Health ("DPH"); (3) suspended visits by friends, families, and volunteers; (4) restricted attorney visits to non-contact; (5) prevented non-essential staff from entering the facility; (6) ceased inmate assignments from the farm operation, community work crew, and other work details outside the facility; (7) eliminated unnecessary movement within the facility; (8) established a housing unit for newly admitted inmates and inmates who leave and return to the facility to monitor signs and symptoms of the virus; (9) conducting court hearings by videoconference and telephone; (10) changed recreation and meal schedules to allow for more space; (11) maintain aggressive cleaning schedule; and (12) educated staff and inmates on sanitation practices and proper social distancing. *See* McDonald Affidavit, at 1-2.  Plymouth is currently well below the maximum capacity, and the facility is working on housing assignments to provide more space for the inmates.  *See* McDonald Affidavit, at 2.

While the government shares Baez-Zapata's concerns over the health of the detainees, there is fortunately no evidence that the illness has endangered the lives of those within Plymouth, and there is nothing right now that suggests that Baez-Zapata's particularized health necessitates his

release.

Baez-Zapata stands accused of a serious felony offense involving a deadly and highly addictive controlled substance, which speaks to the danger he presents to the community, and he is facing a ten year mandatory minimum sentence. Finally, the government would note that other judges in this district have had the opportunity to consider similar requests made by defendants in Massachusetts and Rhode Island facilities. *See United States v. Guerrero-Lara,* 19-CR-10476-RGS, Docket No. 27 (Kelley, M.J.) (denying motion by defendant charged with narcotics offenses based on failure to raise particularized concerns about the defendant or Wyatt); *United States v De La Cruz*, 19-CR-10047-RGS, Docket No. 43 (Boal, M.J.) (denying motion by defendant charged with narcotics offenses based on failure to raise particularized concerns); *United States v Netzahault*, 20-CR-10031-LTS, Docket No. 29 (Boal, M.J.) (denying motion by defendant charged with narcotics and firearms offenses based on failure to raise particularized concerns); *United States v. Abinader*, 19-CR-10377-MLW, Docket No. 50 (Boal, M.J.) (denying motion by defendant charged with firearm offense who suffers from asthma); *United States v. Nuzzolili*, 17-CR-40035-TSH, Docket No. 251 (Hillman, D.J.) (denying motion by defendant detained pending sentencing); *United States v. Teixeira*, 19-CR-1026-FDS, Docket No. 75 (Dein, M.J.) (denying motion for release based on failure to raise particularized medical condition); *United States v. Nia-Bush Moore*, 18-CR-30001-WGY, Docket No. 568 (Young, D.J.) (denying motion for release of MCI-Framingham detainee charged with narcotics offenses who suffers from asthma, heart disease, obesity, poorly controlled diabetes, and compromised immunity due to lupus, noting that defendant's medical conditions likely more safely managed by DOC medical staff than in community).

The government appreciates the gravity of the COVID-19 pandemic.   Baez-Zapata cites to a number of cases in which courts have released other defendants who are particularly vulnerable to the COVID-19 virus.   However, here, Baez-Zapata does not raise particularized concerns that would make him more susceptible to the virus.   Nor has he articulated conditions or a combination of conditions that would reasonably assure his appearance as required or the safety of the community.   The government respectfully submits that Baez-Zapata has failed to make a sufficient showing to warrant his release.

## CONCLUSION

The COVID-19 pandemic is an unprecedented public health emergency and every facet of our Government is taking precautionary steps to slow the spread and impact.   The Plymouth Detention Facility is taking unprecedented cautionary steps in that regard, and has thus far been successful in maintaining a safe environment for detainees.   Even in the midst of this pandemic, the factors set forth in 18 U.S.C. § 3142 must still guide the Court in determining, on a case-by-case basis, whether pretrial release is appropriate, namely: whether there are conditions that can reasonably assure Baez-Zapata's appearance and protect the community.   The government respectfully submits that where, as here, the government has met its burdens of demonstrating at a hearing that the defendant poses a risk of flight and a danger to the community, and the defendant presents no unique vulnerabilities to COVID-19, the defendant should be detained.

For the reasons stated herein, this motion should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Alathea E. Porter*
ALATHEA E. PORTER
ASSISTANT UNITED STATES ATTORNEY

Dated: April 6, 2020

## CERTIFICATE OF SERVICE

I, Alathea E. Porter, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Alathea E. Porter*
ALATHEA E. PORTER